[Civ. No. 2391.   Fourth Appellate District.—May 28, 1940.]

JOHN T. MUTCH, Respondent, v. SAN DIEGO ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

Morrison, Hohfeld, Foerster, Shuman & Clark and V. F. Bennett for Appellant.

Atherton & Atherton for Respondent.

BARNARD, P. J.—This is an action for damages for injuries alleged to have been suffered by the plaintiff. The court, sitting without a jury, awarded the plaintiff $1600 and the defendant has appealed from the judgment. Among other things, the court found that the plaintiff was injured as he was attempting to board a street car operated by the defendant, when the motorman, without warning, started the car and closed the doors, and the plaintiff's left foot was caught in the folding step.

The appellant's main contention is that the evidence is insufficient to support the findings and judgment for the reason that it conclusively appears that it was a physical impossibility for the purported accident to have happened. It may be here noted that the motorman testified that on this occasion he stopped the car and opened the doors to admit another passenger; that he saw no one else and closed the door; that after this passenger paid his fare he looked to see that there was no vehicle or pedestrian in the way and started the car smoothly; that when the car had moved three or four feet someone slapped the side of the car door and asked him to wait a minute; that he stopped the car, opened the door and the respondent entered; and that from the time he first saw the respondent until the car stopped the respondent moved with the car and was on his feet. Another witness for appellant, a high school girl who was riding on the street car, testified to the same effect.

It should also be noted that there were two doors at the front end of the street car in question, with a stanchion or handhold between them. These doors were opened and closed by a mechanical contrivance operated by the motorman. The opening of the doors lowered the bottom steps and when the doors were closed these bottom steps were raised so that they stood on edge just outside the doors.

The respondent testified that as he got out of an automobile at the curb, he saw the street car approaching and another man standing at the stopping place; that he went out to where this man was standing, before the street car stopped; that he carried in his right hand a box containing a microscope which weighed 35 pounds; that as the other man entered the front one of the two doors he placed his left foot on the bottom step of the second door from the front and took hold of the handhold between the two doors with his left hand; that he attempted to follow the other man through the front one of the two doors, swinging the box he carried ahead of him; that as he was doing this the doors of the car closed and the car moved forward; that the closing doors skinned a knuckle on his left hand, but he got his hand out; that the folding step caught his left foot; that he fell back to the pavement but still held on to the box; that his left foot caught in the step and he took two or three hops on his right foot before the car was stopped and the doors opened; and that

he twisted his back and injured the left side of his body, including his foot, leg and hip.

This testimony corresponds almost exactly with a written statement which the respondent gave to the appellant, at its request, six days after the accident.

The testimony of the driver of the automobile from which the respondent alighted is to the same effect. He testified that the respondent, carrying the box in his right hand, went directly toward the door of the street car where the other man was standing; that the two men were about three feet apart when the car stopped; that he had a clear view of what occurred; that when the car stopped the door opened and the other man got on; that the respondent "reached up and got the bar, put one foot up there"; that the door then closed on his hand and the car started; that the respondent hopped along on one foot and fell over on the box; that then someone in the car "hollered" and the car stopped; that the respondent fell over on the box at about the same time the car stopped; and that the respondent immediately got up and entered the car.

The respondent's evidence is partially corroborated, at least to the extent of showing that something out of the ordinary happened, by a part of the testimony of appellant's witnesses. The high school girl, to whom we have referred, further testified that when the respondent boarded the car he took a seat beside her; that he immediately crossed his left leg over his right knee, pulled down his sock and looked at his ankle; that the motorman asked what was wrong and she asked him if he was hurt; and that he said he was not hurt but he continued to rub his ankle for a block or two. The motorman also testified that immediately after the respondent boarded the car he saw him rubbing his shins and asked what was the trouble and that the respondent replied that he had a funny sensation; that to his question as to what caused it the respondent said: "I caught it in your car step"; and that he told the respondent this was impossible and that he must be mistaken, but that the respondent insisted that this had occurred although he said he was not hurt.

The respondent went to a doctor the day after the occurrence in question. This doctor died before the trial and his testimony was not available. Another doctor testified that he examined the respondent four days after the date of the al-

leged accident; that the respondent then had an abrasion or bruise on the front of his left foot, with some blackness, swelling and redness; that he had tenderness on his foreleg and thigh; that there was evidence of muscle strain and evidence of a sprain of the tendons, ligaments and muscles of the left leg and hip region; that he thereafter treated him twenty times; and that he seemed to be suffering pain from an injury. He further testified that the respondent had an arthritic condition which had been aggravated by strain or sprain. Before the cause was submitted, the trial judge, the reporter, the respondent and counsel for both parties inspected the street car in question.

It is not contended that the respondent's evidence, if believed, is insufficient to support the findings and judgment. It is insisted, however, that this evidence is so inherently improbable and unbelievable that it must be disregarded in the light of certain facts which conclusively show that it was physically impossible for this accident to have happened in anything like the manner related by the respondent's witnesses. Cases are cited to the proposition that a judgment may and should be reversed where immutable physical laws disclose the fact that the testimony upon which the judgment is based could not by any possibility be true. While this may be conceded it is also true, as pointed out in many automobile collision cases, that it is not always possible to tell what immutable physical laws are applicable in a given situation because of the many unknown factors such as, for instance, the weight of the respective objects, the force and direction of the blows, the time element, and the uncertainty arising from the actions and reactions of the human beings involved in the accident.

The contention that it was physically impossible for this accident to have happened in the manner claimed is based upon certain evidence of tests made with the car in question and upon a part of the testimony given by the respondent. On cross-examination, the respondent was asked whether, on the occasion in question, after placing his left foot on the step of the second door and taking hold of the stanchion between the two doorways he then brought his weight up on his left foot; whether he took his right foot off the ground; and whether, when the step folded up, he was standing with his weight on his left foot and his right foot suspended in the

air and about to be placed on the step of the first doorway. To each of these questions he replied in the affirmative. Two employees of the appellant testified that about a year after the accident they made a test on this same street car, which was then in approximately the same condition, by placing weights on the lower steps when the doors were open, for the purpose of ascertaining what weight thereon would prevent the closing of the doors and the raising of these steps. They testified that when a weight of 62 pounds was placed on the step nearest the front end of the car the operation of the mechanical device failed to close that door and raise that step and, similarly, that a weight of 43 pounds on the step of the second door prevented the closing of that door and the raising of that step. They also testified that one of them placed his left foot on the step to the second door when the doors were in an open position, without putting much weight on that foot, and that when the doors were closed by the operating mechanism the step was raised against the foot but that this man had no difficulty in withdrawing it.

From this evidence, and since the respondent weighed 188 pounds, it is argued that it conclusively appears that the door and step could not have closed while he was standing with his full weight on his left foot and, further, that if it be assumed that only a part of his weight was on his left foot and the step did fold it could not have so held his foot as to drag him while the car was in motion.

It is at once apparent that this excerpt from the testimony of the respondent, upon which the appellant relies, is not necessarily subject to the interpretation placed upon it by the appellant. The statements thus made should be considered in connection with the remainder of respondent's testimony and with the other evidence given in his behalf. While it may be true that there was an instant when much of his weight was on his left foot, as his right foot left the ground, it must also be remembered that he was holding to the stanchion between the doors with his left hand and that he was swinging a 35-pound box ahead of him as he was attempting to place his foot on the step of the front door and to enter that door. A part of his weight would naturally be sustained by his left hand, and his swinging motion through the air following a 35-pound weight in his right hand would further reduce the pressure from his left foot. If the front

door closed as he was swinging toward it his right foot would naturally go to the ground. This is what occurred, according to his evidence, and the resultant shift of his weight may well have been sufficient to permit the second step to be raised against his left foot. All of these things may have been further affected by the sudden movement of the car and the respondent's reaction thereto. There are no physical facts which give us an accurate measure of these various forces, or which conclusively show that the doors could not have been closed and the steps raised.

The fact that another man, while making a test under less excitable conditions, was able to withdraw his foot when the step was raised against it is not conclusive. Many a person catches his foot where another does not. The respondent was 68 years old and there is evidence that he was not as active as he had once been. He would naturally be startled by the sudden moving of the car and if the step closed on his foot about the same time, his first thought may have been to keep his balance by hopping along on his right foot and he may not have had the presence of mind to make the effort necessary to extricate his foot, and which might be made by a man making such a test under calmer conditions. The respondent did not claim to have been dragged while lying prone. He said he took two or three hops on his right foot while his left foot was caught, and that he fell back to the pavement. He could hardly have taken the hops after he fell, and the other eye-witness said he fell over at about the time the car stopped.

All of respondent's evidence was to be taken into consideration and while the evidence of the tests made by appellant's employees was also to be considered this merely created a conflict, which was one for the trial court. No facts appear from which it can be said that it was a physical impossibility for the accident to occur in the manner stated, or which disclose the respondent's evidence to be so inherently improbable or unbelievable that it must be rejected in its entirety.

■ The appellant next contends that the court erred in not permitting one of its motormen, George Wills, to testify that the respondent approached him shortly before the trial, while he was changing the trolley at the end of his line, with a request that he (the respondent) be allowed to try and get his foot caught in the step of the door. It is argued that the

only purpose of making such a request would be that the respondent wished to secure information concerning the mechanism of such street cars with a view to fabricating a story which would seem plausible and support the claim he had decided to make. However, another purpose would seem more or less reasonable since the motorman had claimed, immediately after the accident, that such a thing was impossible. Moreover, another of the appellant's motormen was allowed to testify that the respondent made a similar request of him about the same time, and the respondent testified that he had made such a request of two motormen. No possible prejudice appears.

It is next contended that the court erred in not giving the appellant an opportunity to secure the testimony of a witness named Brownstone. It appears that this witness was subpoenaed and that when the trial of the case was continued appellant's counsel phoned the witness giving the date to which the trial was postponed, but did not again subpoena him. Counsel discovered on the date to which the case was continued that the witness had left town. Early in the trial he reported this to the trial judge and stated that he did not desire to ask for a continuance, but that at the close of the evidence, if the court would like to have the testimony of this witness, he would arrange to take his deposition. At the close of the evidence counsel told the court he would like to have the privilege of taking the deposition of this witness "if you think it is material or important". After some discussion the court said: "We won't waste any time on that." It appears that the testimony which this witness would have given was that he saw the respondent shortly after the accident occurred but on the same day, that he saw him walking and standing and that he did not observe any limp or evidence of injury. No diligence was shown, no offer of proof was made, and the matter was not pressed. The evidence was cumulative, at best, and it could hardly have affected the result since the effect of injuries is not always immediately apparent. No reversible error appears.

The appellant further contends that the court erred in denying its motion to reopen the case for the purpose of taking additional evidence. This motion was made after the trial judge had stated that he would give judgment for the respondent and had directed him to prepare findings. The

evidence thus requested included the testimony of the witness Brownstone, which we have already mentioned and which requires no further consideration. It also included "a statement by the trial court of the test and inspection made by said court of the street car involved in the purported accident". This was not additional evidence, but an attempt to get a written record of evidence already before the court which had taken the form of an inspection of the street car. If the inspection and test had not convinced the court that it was physically impossible for the accident to have happened it is difficult to see how the making of a statement by the trial judge as to what he had observed could have changed the situation. The matter was one entirely within the discretion of the trial court and no abuse of that discretion appears.

The appellant has applied to this court for leave to produce additional evidence; it being requested that this court take the testimony of the witness Brownstone and take evidence in the form of tests and demonstrations of the operating mechanism of the doors and steps of the street car involved in this accident. The first of these matters has been sufficiently covered. The test and demonstration requested would seem to be less the taking of new evidence than the repeating of evidence already taken and considered by the trial court, in the hope that it might have a different effect upon this court. Such an inspection was made by the trial court and while the results are not set forth in the record the making of such tests and the results thereof were rather completely described in the testimony of two witnesses for the appellant, which does appear in the record. Aside from any other consideration, it rather clearly appears that the making of such a test and demonstration could do no more than add to the already existing conflict in the evidence. Such conflicts are within the exclusive domain of the trial court.

The application for leave to produce additional evidence is denied, and the judgment is affirmed.

Marks, J., and Griffin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 25, 1940.